

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Arnold Smith
County Attorney
Montgomery County
Conroe, Texas

Dear Sir:

Opinion No. O-4896
Re: Whether candidate for position
on party county executive com-
mittee may be elected to office
when said candidate's name goes
upon primary ballot under im-
proper precinct number and re-
lated questions.

Receipt is hereby acknowledged of your recent let-
ter requesting opinion of this department. We quote from
your letter as follows:

"We have the following fact situation here
in Montgomery County. Montgomery County is com-
posed of twenty (20) Election Precincts. In the
last Primary Election there were only eight (8)
Committeemen elected. The candidates for the of-
fice of Committeemen were placed on the ballot
according to Justice Precinct Number rather than
according to Election Precinct Number. In some
instances the Justice Precinct Number is the same
as the Election Precinct Number. As for example,
Willis is Election Precinct Number One and Willis
is also located in Justice Precinct Number One.
There would seem to be no question but what the
candidate elected from this precinct has been du-
ly elected. The same is true of Montgomery, which
is Election Precinct Number Four and is also lo-
cated in Justice Precinct Number Four. This was
true of five (5) Committeemen elected throughout
the county. Their names went on the ballot as
Committeemen from their proper Election Precincts.
However, in most instances the Justice Precinct

Numbers did not correspond with the Election Precinct Numbers. Conroe is composed of two (2) Election Precincts, Numbers Ten and Twenty, respectively. Conroe is located in Justice Precinct Number Seven. There was only one name printed on the ballot for Conroe. This name went on the ballot as Committeeman for Precinct Number Seven. Election Precinct Seven happens to be New Caney and not Conroe. The question has arisen as to whether these men who were purportedly elected, their names having been placed on the ballot under Justice Precinct Numbers rather than Election Precinct Numbers, can validly hold as Committeemen.

"As seen from the statement of facts above, there were no proper candidates submitted to the voters in twelve (12) of the twenty (20) Election Precincts in this county. I illustrate this point as follows: Justice Precinct Number One, Montgomery County, Texas, is composed of two (2) Election Precincts, Willis and McRae. Willis is Election Precinct Number One and McRae is Election Precinct Number Eight. In preparing the ballot the Executive Committee submitted the name of the candidate for Committeeman as 'Committeeman for Precinct Number one.' This ballot was used in both Willis and McRae. There was only one candidate for this position and he of course received practically all of the votes in both Willis and McRae. However, there was no candidate residing in McRae for this position and the Executive Committee failed to submit a ballot for Committeeman for Precinct Eight to the voters of McRae. It is my understanding that this should have been done even though no candidate filed for this position. The ballot should have been prepared in such a way that the voters of this Election Precinct could have written in whom they chose. I merely used Precinct One as an example. This condition was true throughout the county.

"  .  .  .  ."

In connection with the above statements you then submit the following questions:

Honorable Arnold Smith, page 3

"1. Can a candidate for a position on the Executive Committee be elected to office when said candidate's name goes upon the ballot under an improper Precinct Number?

"2. Is a candidate for such position duly and properly elected when said candidate is voted upon by the voters of more than one election precinct, although said candidate's name was submitted by ballot under the proper Precinct Number?

"3. Would the purported County Executive Committee composed of members less than a majority because of the fact that a full committee had never existed, have the authority to fill vacancies on such committee?

"4. In the event that the purported Executive Committee is without authority to fill such vacancies, would the County Convention be authorized to certify names of members for election precincts where no member had been elected by the voters of such precinct?"

Since your first two questions are so closely related they will be treated together. It appears that there are eight justice precincts in the county, the maximum allowed under the Constitution, and that there were one or more candidates for election precinct chairman from each of such justice precincts. In five of these election precincts, the election precinct number corresponds with the justice precinct number in which such election precincts are located. However, in three of the eight justice precincts there is no election precinct with numbers corresponding to the justice precincts in which such election precincts are located. Since there are only eight justice precincts, there remain twelve election precincts with numbers not corresponding to any justice precinct number, there being twenty election precincts.

Article 3118, R. C. S. of 1925, provides that there shall be for each political party required by law to hold primary elections for nomination of its candidates, a county executive committee, to be composed of a county chairman, and one member from each election precinct. The precinct committeeman shall act as chairman of his election precinct, all committeemen to be elected on the general primary election day

Honorable Arnold Smith, page 4

by the qualified voters, and the county chairman by the qualified voters of the county, and the precinct chairman by the qualified voters of their respective election precincts. The Article further provides that:

"Any vacancy in the office of chairman, county or precinct, or any member of such committee shall be filled by a majority vote of said executive committee."

In the early case of State ex rel Easterday v. Hove, 44 N. W. 874, by the Supreme Court of Nebraska, the relator was a candidate for Justice of the Peace for the 3rd District. The candidate resided in the 3rd District and was voted upon by the people of the 3rd District. In some of the polling places in the 3rd District the candidate's name was placed on the ballot as "candidate for Justice of the Peace for District No. 1." The Court, in holding that these ballots should be counted for relator said:

". . . . While these ballots designated the wrong district, yet being cast in the third district where relator was a candidate for justice of the peace, they certainly show that the voters intended to vote for the relator for justice of the peace of the district in which they were cast. The words 'first district' did not, as we think, constitute a part of the legal designation of the office. They should be treated as surplusage, and these ballots should be counted for relator. . . ."

Applying the rule announced in the Hove case, supra, if the candidate for committeeman from Justice Precinct No. 1 resided in Election Precinct No. 1 and received a majority of the votes cast in Election Precinct No. 1, then such candidate was duly elected committeeman from Election Precinct No. 1. If, however, such candidate resided in Election Precinct No. 8, and Justice Precinct No. 1, and received a majority of the votes cast in Election Precinct No. 8, then he would be the duly elected committeeman from Election Precinct No. 8. If such candidate received a majority of the votes cast for committeeman in each of such precincts then one of the two precincts did not elect a committeeman.

Honorable Arnold Smith, page 5


Conroe, you state, is located in Justice Precinct No. 7 and that there was only one name printed on the ballot for Justice Precinct No. 7. You state that Election Precincts Nos. 10 and 20 are located within Justice Precinct No. 7. In such instance if the candidate from Justice Precinct No. 7 resided in Election Precinct No. 10, for example, and received a majority of the votes cast for committeeman in said Election Precinct No. 10, then such candidate is the duly elected committeeman from Election Precinct No. 10. The rule announced in the Howe case, supra, together with examples herein given may be applied in determining the status of each candidate for committeeman in the county. The fact that the election precinct may have been improperly designated on the ballot would be immaterial, the designation being mere surplusage.

The rule thus announced should not be considered applicable to every instance where there is an improper designation of a district or precinct office. For example, where a county is included within two or more judicial districts and there are candidates for district judge for each of such districts, the rule may not properly apply, depending of course on the circumstances. The fact that a candidate must reside in the precinct or district from which he is a candidate, the intention of the voters, the qualifications and intentions of the candidate or candidates must all be considered in determining the applicability of such a rule as is here applied.

Applying the rule thus announced together with the particular circumstances and facts set out in your request, it follows that your first question should be answered in the affirmative.

The fact that a candidate for committeeman may have been voted upon by voters outside the precinct in which he resides would be immaterial in determining his election in the precinct in which he resides. Such votes cast for or against such candidate in precincts outside the precinct in which he resides should not be counted for or against him. He cannot be elected committeeman from an election precinct in which he does not reside. For example, if the candidate from Willis (Election Precinct No. 1) lived in Precinct No. 1 and received a majority of the votes cast in Election Precinct No. 1, he is the duly elected candidate from the Willis Precinct.

Honorable Arnold Smith, page 6

If such candidate from Willis also received a majority of the votes cast in the McRae Precinct (Election Precinct No. 8) then there was no committeeman elected from such McRae Precinct.

Under the particular circumstances, and the assumptions thus made, it follows that your second question should also be answered in the affirmative.

In regard to your third question we direct your attention to the case of Walker et al. v. Hopping, 226 S. W. 146. In that case it was held that the county executive committeemen of a party continue to hold over until their successors are chosen and qualified. After thus stating the rule the Court said:

"... The reason for the rule that an officer ordinarily holds over until the qualification of his successor is based on convenience, its object being to prevent the evils that would result from the fact that otherwise a situation might come about where there would be no one to perform the functions of the office to the detriment of the public or parties interested, it being evidently to the interest of all such parties that no such hiatus occur. Qualification is a formal method of denoting acceptance of the office, and the reason for the general rule logically pursued would seem to us to lead to the conclusion that in cases of this kind the old officer should hold on until the acceptance by his chosen successor."

Applying the rule thus stated in the case of Walker v. Hopping, supra, to your situation it would appear that the committeemen who were elected in 1940 from the election precincts which did not elect any committeemen in 1942, would hold over and remain members of the executive committee until their successors are chosen in the manner provided for in Article 3118, supra. The candidates so elected in 1942 together with the hold-overs from election precincts not electing any committeemen in 1942 would compose the party executive committee of Montgomery County.

Having first determined the composition of such party executive committee it then remains to be determined whether such committee thus composed may proceed to act.

Honorable Arnold Smith, page 7

The statute authorizing such executive committee is silent as to what shall constitute a quorum. We must therefore look to the common law in order to determine this phase of your question.

Article 1, R. C. S. 1925, reads as follows:

"The common law of England, so far as it is not inconsistent with the Constitution and laws of this State, shall together with such Constitution and laws, be the rule of decision, and shall continue in force until altered or repealed by the Legislature."

In Volume 35 of Words and Phrases, page 672, the rule as to what shall constitute a quorum at common law is stated as follows:

"Under the common law rule, a majority of the authorized membership of a representative body consisting of a definite number of members constitutes a quorum for the purpose of transacting business." (Emphasis ours)

In the case of United States v. Ballin, Joseph and Co., 12 S. Ct. 507, 114 U. S. 1, 36 L. Ed. 321, the United States Supreme Court quoted with approval the following rule:

". .. 'And, as a general rule, it may be stated that not only where the corporate power resides in a select body, as a city council, but where it has been delegated to a committee or to agents, then, in the absence of special provisions otherwise, a minority of the select body, or of the committee or agents, are powerless to bind the majority or do any valid act. If all the members of the select body or committee, or if all the agents are assembled, or if all have been duly notified, and the minority refuse or neglect to meet with the others, a majority of those present may act, provided those present constitute a majority of the whole number. In other words, in such case, a major part of the whole is necessary to constitute a quorum, and

Honorable Arnold Smith, page 8

> a majority of the quorum may act. If the major
> part withdraw so as to leave no quorum, the power
> of the minority to act is, in general, considered
> to cease.' . . ."

It is therefore the established rule, unless otherwise regulated, that a body such as a county executive committee may not take any valid action unless a majority of the authorized membership be present. In Montgomery County the authorized membership of the county executive committee is twenty. Therefore in order for such committee to take any valid action it is necessary that at least eleven members be present. You are therefore advised, in answer to your third question, that a county executive committee does not have authority to fill vacancies on such committee unless a majority of the authorized membership be present.

In answer to your fourth question the county convention is not authorized to fill existing vacancies on the county executive committee.

In conclusion you submit the following question:

"Is the County Chairman of the Executive Committee entitled to compensation for his services in addition to the compensation which he receives for presiding over each meeting for the County Executive Committee?"

We are unable to find any authority permitting the county executive committee to allow the county chairman compensation for his services rendered in such capacity. In Small v. Parker, 119 S. W. (2d) 609, it was held that the county chairman was not entitled to an annual salary for his services. This case did not go so far, however, as to hold that said chairman is not entitled to any compensation whatsoever.

Article 3108, R. C. S., 1925, provides for the expenses of primary elections. There is nothing in such statute indicating that the chairman of the executive committee or any member thereof shall be entitled to receive fees for their services. The Court in the case of Small v. Parker, supra, in holding that the county chairman was not entitled to an annual salary said:

Honorable Arnold Smith, page 9

". . . . Furthermore, if the county chairman
and committee is vested with authority to make
assessments beyond that which is reasonable and
necessary for the defraying of the expenses of
the primary, then if they could pay the county
chairman an annual salary they could just as well
pay the various members of the committee a salary
and this would make it prohibitive on the candi-
dates to announce for office and have their names
placed on the ticket, thus destroying the very
purpose for which the county chairman and the
committee exists."

It is therefore the opinion of this department that
the chairman of the county executive committee is not entitled
to any compensation for his services rendered in such official
capacity.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By E. G. Pharr

E. G. Pharr
Assistant

EGP:db